**CASUALTY ASSURANCE RISK INSURANCE BROKERAGE CO., a Guam Corporation, Plaintiff–Appellant,**

v.

**John J. DILLON, III, individually and as Insurance Commissioner for the State of Indiana, et al., Defendants–Appellees.**

**No. 91–16088.**

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 19, 1992*.

Decided Oct. 5, 1992.

---

* The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34–4.

James S. Brooks, Brooks, Brooks & Perez, Agana, Guam, for plaintiff-appellant.

John A. Spade, Mair, Mair & Spade, Agana, Guam, for defendants-appellees.

Before WIGGINS, O'SCANNLAIN, and FERNANDEZ, Circuit Judges.

WIGGINS, Circuit Judge:

## OVERVIEW

Plaintiff, Casualty Assurance Risk Insurance Brokerage Co. (CARIB), filed a tort action against defendant John Dillon both in his official capacity as Indiana Insurance Commissioner and in his personal capacity. The Superior Court of Guam dismissed this

action for lack of personal jurisdiction, and the Appellate Division of the United States District Court for the district of Guam affirmed. We affirm the district court's decision.

## BACKGROUND

The facts relevant to the existence of personal jurisdiction in this case are undisputed. CARIB is incorporated under the laws of Guam for the purpose of engaging in the insurance business. Although CARIB maintains a home office on Guam, most of CARIB's correspondence is handled through its Washington, D.C. office. CARIB has not sold any insurance on Guam nor derived any income from Guam. Medical Liability Purchasing Group (MLPG) is an Indiana corporation that is closely related to CARIB. CARIB employees in the Washington, D.C. office receive and open all of MLPG's mail and handle all of MLPG's phone inquiries. Moreover, MLPG's checking account requires the signature of a CARIB vice-president.

In 1988, MLPG attempted to qualify as an Indiana purchasing group offering medical malpractice insurance to health care providers. MLPG's only insurance carrier was CARIB, which had never been licensed in Indiana nor any other state. In September 1988, the Indiana Attorney General directed MLPG to cease its activities because it was not registered as a purchasing group pursuant to 15 U.S.C. §§ 3901–3906 (1988). After MLPG and CARIB refused to comply with this order, the Attorney General filed for an injunction in the United States District Court for the Southern District of Indiana.

In the meantime, the defendant and his staff contacted the Guam Insurance Commissioner to obtain information about CARIB. This limited correspondence is the only contact the defendant has had with Guam. In October 1988, the Guam Insurance Commissioner sent a letter to the defendant's staff advising them that CARIB "is still in its infancy and needs to develop to become viable." The letter further advised Indiana to "be very cautious in admitting this company to do business in your jurisdiction."

In June 1989, the District Court for the Southern District of Indiana enjoined MLPG's purchasing group activities. The court also ordered MLPG to provide the defendant with the names and addresses of all healthcare providers MLPG had solicited for business, and it directed the defendant to send a letter to these healthcare providers to inform them of the injunction.[1] Shortly thereafter, in July 1989, the Guam Insurance Commissioner notified Indiana that CARIB's Certificate of Authority had not been renewed. The defendant then mailed letters informing the healthcare providers that CARIB's purchasing group activities had been enjoined and that CARIB's Certificate of Authority had been revoked pending a hearing. The letter was never sent to or circulated on Guam because CARIB had not solicited any business on Guam.

The causes of action in this case arise from this letter. CARIB alleges that the letter was drafted to be misleading and to harm CARIB. CARIB alleges (1) that sending the letter constituted the tort of libel, (2) that the defendant committed the tort of slander by orally communicating the same information to a healthcare provider, (3) that the letter and oral communications tortiously interfered with CARIB's contractual relations with healthcare providers, and (4) that the defendant engaged in a common law conspiracy to harm CARIB. The Superior Court of Guam dismissed CARIB's complaint because it determined that the exercise of jurisdiction over the defendant would violate the Due Process Clause of the United States Constitution. The United States District Court for the District of Guam, Appellate Division, af-

---

1. The district court's order was later reversed in *Dillon v. Combs*, 895 F.2d 1175, 1177 (7th Cir. 1990), *cert. denied,* — U.S. —, 111 S.Ct. 670, 112 L.Ed.2d 663 (1991), on the grounds that there is no private right of action to enforce 15 U.S.C. § 3903(f) in federal court. However, this decision came well after the letter had been sent.

firmed this decision. CARIB appeals the district court's decision.

## DISCUSSION

■ This case turns on a single issue. We must determine whether sufficient minimum contacts exist between the defendant and the forum to allow the exercise of *in personam* jurisdiction over the defendant. Because the jurisdictional facts are undisputed in this case, the constitutional limits on personal jurisdiction are reviewed de novo. *Brainerd v. University of Alberta,* 873 F.2d 1257, 1258 (9th Cir.1989); *Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.,* 784 F.2d 1392, 1396 (9th Cir. 1986).

■ In *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), the Supreme Court summarized the limitations that the Due Process Clause places on the power of a forum to exert jurisdiction over a nonresident defendant. Unless "the defendant purposefully established 'minimum contacts' in the forum State," exercise of jurisdiction over the defendant violates the Due Process Clause. *Id.* at 108, 107 S.Ct. at 1030 (citations omitted). In addition, we "must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief," as well as the "judicial system's interest" in the "efficient resolution of controversies." *Id.* at 113, 107 S.Ct. at 1032 (citation omitted).

■ CARIB argues that there are sufficient minimum contacts between the forum and the defendant in this case because the effects of the defendant's allegedly tortious conduct were felt in Guam. According to CARIB, minimum contacts exist because damage to a Guam business was a foreseeable effect of the allegedly libelous letter. At first glance, there is some support for this theory of minimum contacts. However, after a more thorough review of the relevant cases, we reject CARIB's well briefed argument for expanding the reach of the purposeful availment analysis and weakening the protections of the Due Process Clause.

CARIB relies primarily upon *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), to support its argument that jurisdiction exists wherever the effects of libel are felt. In *Calder,* the Supreme Court reviewed a decision by the California Court of Appeal which held that jurisdiction over nonresident defendants in a libel action "existed on the theory that petitioners intended to, and did, cause tortious injury to [the plaintiff] in California." *Id.* at 787, 104 S.Ct. at 1485. The Supreme Court approved this theory and held that jurisdiction could be based on the effects of the defendant's conduct.

However, the Court also noted that the defendants' employer published and sold about 600,000 copies of the allegedly libelous magazine in the forum state through its local distributing company. *Id.* at 785, 104 S.Ct. at 1485. The nonresident defendants could be charged with knowing that the brunt of their allegedly libelous story would be felt in the state where the plaintiff lived and worked because the defendants' magazine had its largest circulation there. *Id.* at 789–90, 104 S.Ct. at 1486–87. Thus, the circulation of the defamatory material in the forum state is an important factor in the minimum contacts analysis for a defamation action.

In contrast to the alleged libel in *Calder,* none of the letters in this case was ever sent to Guam. The defamatory material was never circulated in Guam except by CARIB itself, and CARIB does not allege otherwise. The only "effect" on Guam was that the business reputation of a Guam corporation was harmed in other jurisdictions. Because CARIB has never sold any policies on Guam, does not derive any income from Guam, and the defamatory material was not directed at or circulated on Guam, it is difficult to see how the brunt of the effects could be felt on Guam. Indeed, the only "relationship among the defendant, the forum, and the litigation" appears to be that the plaintiff is incorporated in the forum jurisdiction; the defendant has almost no contacts with the forum. *Id.* at 788, 104 S.Ct. at 1486 (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204, 97

S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977)). Unlike the defendants in *Calder*, the defendant in this case has not established contact with the forum by unleashing libel that he knew would be widely circulated in the forum jurisdiction.

The opinion in *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), issued the same day as *Calder*, confirms that circulation of the libel in the forum jurisdiction is a key factor in determining whether a nonresident defendant has sufficient contacts with the forum. In *Keeton*, the Court held that the defendant's "regular circulation of magazines in the forum State is sufficient to support an assertion of jurisdiction in a libel action based on the contents of the magazine." *Id.* at 773–74, 104 S.Ct. at 1477–78. Because the nonresident defendant had sent its magazines to be circulated throughout the forum state, the Court agreed with the district court that the defendant's conduct "was purposefully directed at [the forum state], and inevitably affected persons in the state." *Id.* at 774, 104 S.Ct. at 1478. In contrast, the defendant's conduct in this case was not purposefully directed at Guam because none of the letters was sent there. *Keeton* also makes clear that the plaintiff's contacts with the forum is a relatively minor factor in the analysis. *See id.* at 775, 104 S.Ct. at 1478. Thus, the fact that CARIB is a Guam corporation is not enough to satisfy the minimum contacts analysis.

In addition, the exercise of jurisdiction does not comply with "traditional notions of fair play and substantial justice," *Asahi*, 480 U.S. at 113, 107 S.Ct. at 1032 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 326, 66 S.Ct. 154, 162, 90 L.Ed. 95 (1945)), and is therefore unreasonable. *See Lake v. Lake*, 817 F.2d 1416, 1421–22 (9th Cir.1987). The burden on the defendant in this case is extreme. It is unreasonable to force the defendant to travel over 7,000 miles to defend an action in Guam when the defendant's contact with Guam has been limited to correspondence with the Guam Insurance Commissioner. Because CARIB does not do any business on Guam and maintains its major offices in Washington, D.C., the interests of the plaintiff and the forum in litigating this dispute on Guam are slight. Moreover, the judicial system's interest in efficiency would be thwarted by litigating this dispute in Guam. As noted by the district court, "[t]he majority of potential witnesses and tangible evidence are located either in Indiana or in Washington, D.C."

▮ Our case law dictates the same result. In *Data Disk, Inc. v. Systems Technology Assocs.*, 557 F.2d 1280 (9th Cir. 1977), the Ninth Circuit set forth a three prong test to ensure that jurisdiction complied with Due Process:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. (2) The claim must be one which arises out of or results from the defendant's forum-related activities. (3) Exercise of jurisdiction must be reasonable.

*Id.* at 1287. This analysis has not been modified by *Calder* or *Keeton*.

First, the defendant's limited contact with the Guam Insurance Commissioner to obtain information about CARIB is not purposeful availment, and the defendant did not invoke the benefit or privilege of acting or consummating transactions on Guam. Because the allegedly defamatory material was not circulated in the forum, the defendant could not "reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Second, because the allegedly libelous letters were never sent to or circulated on Guam, the libel claim does not arise out of defendant's contacts with the forum. Finally, as discussed above, the burden on the defendant and the inefficiency of litigating these claims in Guam are unreasonable.

CARIB's discussion of *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191 (9th Cir.1988), is revealing. CARIB claims that

the present case is governed by *Sinatra,* but then admits "that the *Sinatra* article was actually published in the forum state." Nevertheless, CARIB ignores the place of publication factor. It's argument, in a nutshell, is that the "effects" of libel are felt and jurisdiction therefore exists wherever the plaintiff resides. CARIB essentially argues that the "effects" of libel are felt and jurisdiction therefore exists wherever the plaintiff resides. However, CARIB has been unable to provide a single citation for this proposition. Instead, CARIB relies on cases which hold that jurisdiction is proper where the plaintiff resides *and* the defamatory material is published or circulated.

In summary, CARIB is urging this court to extend the "effects" theory from *Calder* to encompass any jurisdiction where the plaintiff is present, regardless of whether any defamation was circulated in that jurisdiction. The relevant authority does not support that extension of the "effects" theory. Moreover, such an extension would undermine the notions of reasonableness, fair play, and substantial justice that are protected by the Due Process Clause. *See Asahi, supra; Data Disk, supra.* Therefore, we AFFIRM the district court's well reasoned opinion.