CORE–VENT CORP., Plaintiff–Appellant,

v.

NOBEL INDUSTRIES AB, Defendant,

and

Per–Ingvar Branemark; Tomas Albrektsson; Ulf Lekholm; Lars Sennerby, Defendants–Appellees.

No. 91–56493.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 8, 1993.

Decided Dec. 16, 1993.

Patrick F. Bright, Bright & Lorig, Los Angeles, CA, for plaintiff-appellant.

Alan I. Becker, Burditt & Radzius, Chicago, IL, for defendants-appellees.

Before: WALLACE, Chief Judge; O'SCANNLAIN and FERNANDEZ, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We are called upon to decide whether a federal district court in California should exercise personal jurisdiction over four doctors in Sweden who allegedly defamed a California corporation in articles published in international medical journals.

## I

Until very recently, Core–Vent was a California corporation with its headquarters in Encino.[1] Core–Vent and its principal competitor, Nobelpharma AB ("Nobelpharma"), a Swedish corporation, are the two largest manufacturers of dental implants in the world.

Branemark, Albrektsson, and Lekholm are professors at the University of Gothenburg in Gothenburg, Sweden. Sennerby is a doctoral candidate at the University of Gothenburg. (We will refer to the appellees collectively as "the Swedish doctors.") All are Swedish citizens and none has visited the United States, or, in particular, California more than a few times on random occasions. Branemark visited California most extensively of the four and is alleged to have visited only five times in the last four years. Branemark is a director of Nobelpharma, and also directs a research institute at the University that is allegedly financed by Nobelpharma. Albrektsson, Lekholm, and Sennerby work at the institute, and are alleged to be paid

---

1. According to the appellees, Core–Vent moved its headquarters to Nevada sometime after the district court's ruling.

consultants to Nobelpharma. According to Core–Vent, Albrektsson and Lekholm co-authored, at the direction of Nobelpharma and Branemark, an article published in the October 1989 issue of *Dental Clinics of North America* that "contained false and misleading comparisons of Core–Vent and Nobelpharma implants." The journal is distributed worldwide, including within California. Albrektsson and Sennerby similarly are alleged to have written, at Nobelpharma's direction, an article defaming Core–Vent. Their article was published in the *International Journal of Oral and Maxillofacial Implants,* which is also distributed worldwide. Core–Vent alleges that Branemark controlled these and other studies in order to further an antitrust conspiracy.

Core–Vent brought suit against Nobelpharma, three individual American citizens, and five Swedish citizens, including the four Swedish doctors. In addition to various claims against the defendants that are not parties to this appeal, Core–Vent brought antitrust claims against Branemark and libel claims against Albrektsson, Lekholm, and Sennerby. The Swedish doctors moved to dismiss the claims against them for lack of personal jurisdiction. The district court granted the motion. Final judgment was entered pursuant to Federal Rule of Civil Procedure 54(b). Core–Vent appeals.

## II

■ As a preliminary matter, we must consider the Swedish doctors' argument that the district court abused its discretion in granting Core–Vent's motion for the entry of final judgment.

Rule 54(b) of the Federal Rules of Civil Procedure provides in relevant part:

When more than one claim is presented in an action ... or *when multiple parties are involved,* the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties *only upon an express determination that there is no just reason for delay* and upon an express direction for the entry of judgment.

(Emphasis added.) Here, the district court expressly determined that there was no just reason for delay because the jurisdictional claims were easily severable from the merits of the lawsuit. The court also concluded that allowing for immediate appeal would serve the efficient administration of justice.

In *Texaco, Inc. v. Ponsoldt,* 939 F.2d 794, 797 (9th Cir.1991), we held that "Rule 54(b) certification is proper if it will aid 'expeditious decision' of the case." *Id.* (quoting *Sheehan v. Atlanta Int'l Ins. Co.,* 812 F.2d 465, 468 (9th Cir.1987)). "However, Rule 54(b) certification is scrutinized to 'prevent piecemeal appeals in cases which should be reviewed only as single units.'" *Id.* at 797–98 (quoting *McIntyre v. United States,* 789 F.2d 1408, 1410 (9th Cir.1986) (internal citations and quotations omitted)).

We are satisfied that dealing with the jurisdictional issue now may obviate the need for a second trial, and thus aids expeditious decision of the case. The jurisdictional question at issue here is unrelated to the other issues in the case; thus, entry of final judgment will not lead to undesirable "piecemeal appeals." In short, the district court did not abuse its discretion in granting Core–Vent's motion under Rule 54(b).

## III

The district court dismissed the claims against the Swedish doctors, concluding that it lacked personal jurisdiction over them.

■ Where, as here, there is no applicable federal statute governing personal jurisdiction, the law of the state in which the district court sits applies. *See Hylwa, M.D., Inc. v. Palka,* 823 F.2d 310, 312 (9th Cir. 1987). This case was brought in the Central District of California; California's long-arm statute allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution. *Data Disc, Inc. v. Systems Tech. Assocs., Inc.,* 557 F.2d 1280, 1286 (9th Cir.1977). Thus, we "need only determine whether personal jurisdiction in this case would meet the requirements of due process." *Brainerd v. Governors of the*

*Univ. of Alberta,* 873 F.2d 1257, 1258 (9th Cir.1989).

■ "[D]ue process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citations omitted). Where the defendant has not had continuous and systematic contacts with the state sufficient to subject him or her to general jurisdiction, the following three-part test is applied to determine whether the defendant has "minimum contacts" with the forum:

(1) The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Lake v. Lake,* 817 F.2d 1416, 1421 (9th Cir. 1987). Here, Core–Vent claims that the Swedish doctors purposefully directed their activities into California by publishing or causing to be published libelous articles about Core–Vent's products in international medical journals. The libel claims clearly "arose out" of the publication of the articles;[2] we thus need consider only the first and third elements of the minimum contacts test.

## A

"The first step of the specific jurisdiction analysis involves a qualitative evaluation of the defendant's contact with the forum state," *Lake,* 817 F.2d at 1421, in order to determine whether the "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Worldwide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Fulfilling this step is not necessarily precluded by a lack of physical contacts with the forum. Rather, "within the rubric of 'purposeful availment' the [Supreme] Court has allowed the exercise of jurisdiction over a defendant whose only 'contact' with the forum state is the 'purposeful direction' of a *foreign* act having *effect* in the forum state." *Haisten v. Grass Valley Medical Reimbursement Fund,* 784 F.2d 1392, 1397 (9th Cir. 1986) (citing *Calder v. Jones,* 465 U.S. 783, 789, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984)).

Core–Vent claims that the Swedish doctors' contacts with California are analogous to those of the individual defendants in *Calder.* The plaintiff in *Calder* was an entertainer who lived and worked in California. She brought suit there, claiming that she had been libeled by an article written in Florida and published in the National Enquirer, a newspaper published in Florida with a large circulation in California. Two of the defendants in the case, the editor of the paper and the reporter who wrote the story, moved for dismissal for lack of personal jurisdiction on the ground that they lacked physical contacts with California. *Calder,* 465 U.S. at 784–85, 104 S.Ct. at 1484–85.

The Court concluded that because "California [was] the focal point both of the story and of the harm suffered," *id.* at 789, 104 S.Ct. at 1486–87, "[j]urisdiction over [the defendants was] ... proper in California based on the 'effects' of their Florida conduct in California." *Id.* The Court stressed that the defendants had not engaged in "untargeted negligence" but instead had "expressly aimed" their tortious actions at a California resident. *Id.* at 789, 104 S.Ct. at 1487. In determining that the actions were "expressly

---

**2.** The libel claims were brought against Albrektsson, Lekholm, and Sennerby but not Branemark. Antitrust claims were brought against Branemark. However, Core–Vent claims that the antitrust conspiracy was furthered through the arti-

cles. For purposes of this appeal, we will assume arguendo that the claims against Branemark arose out of the libelous articles that were allegedly written at Branemark's direction.

aimed" at the forum state, the Court considered the totality of the circumstances surrounding the events. *Id.* at 788, 104 S.Ct. at 1486. The activities that were the subject of the story took place in California, and the story was · drawn from California sources. *Id.* at 788–89, 104 S.Ct. at 1486–87. Most significant, the court concluded defendants knew that the brunt of the harm would be suffered in California for two reasons. First, since the defendants knew that the plaintiff lived and worked in California, the defendant knew that the negative effects on the plaintiff's reputation would primarily be suffered there. *Id.* at 789–90, 104 S.Ct. at 1487. Second, the defendant knew that the National Enquirer had a large circulation in California—in fact the largest of any place in the country. The Court concluded that the effects of a libel would be felt most severely in the place where the libel was most extensively published. *Id.* "Under these circumstances," the Court concluded, the defendants "must [have] reasonably anticipat[ed] being haled into court" in California. *Id.* at 790, 104 S.Ct. at 1487 (citations omitted).

*Calder* thus established that personal jurisdiction can be predicated on (1) intentional actions (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered—and which the defendant knows is likely to be suffered—in the forum state.[3] Although *Calder* did not purport to make this an exclusive list of the circumstances under which the new "effects test" could be applied, we have thus far refused to extend the holding to defendants whose contacts are more remote. In *Casualty Assurance Risk Insurance Brokerage Co. v. Dillon,* 976 F.2d 596, 601 (9th Cir.1992), for example, we refused to accept the plaintiff's argument that the effects of libel· are felt and jurisdiction exists wherever a corporate plaintiff resides. Likewise, in *McGlinchy v. Shell Chemical Co.,* 845 F.2d 802, 817 (9th Cir.1988), we refused

to apply the *Calder* effects test when the underlying action involved a contract dispute, not a tort. *Cf., e.g., Brainerd,* 873 F.2d 1257 (jurisdiction upheld where facts were analogous to *Calder* ).

Whether the conduct in this case meets the *Calder* effects test is a close question. Core–Vent suggests that *Calder* is precisely analogous to the situation here. We are unpersuaded. First, we cannot conclude by analogy to *Calder* alone that the acts in question here were "expressly directed" at California. While in *Calder* the events underlying the libelous story occurred in California and the story was researched through California sources, here the libel concerned a product that was distributed worldwide. It has not been alleged that the product reached the doctors other than through the stream of commerce. Unlike in *Calder,* therefore, the articles cannot be seen as a comment on a California event. Moreover, while any article written in the National Enquirer might well be directed at a California audience, here, by contrast, although the medical journals were circulated worldwide, it has not been alleged that California was a primary audience for the medical journals or that the defendants knew that the journals would be circulated in that state.

Second, unlike in *Calder,* it is unclear whether the brunt of the harm was suffered in California. *Calder* involved a libel against an individual; this case involves a libel against a corporation. A corporation does not suffer harm in a particular geographic location in the same sense that an individual does. We concluded in *Dillon* that the harm from an allegedly libelous statement is not necessarily suffered in the place of incorporation. *Dillon,* 976 F.2d at 599–600. We have never considered whether such harm is primarily suffered in the place where the corporation is headquartered.

---

**3.** The dissent's reliance on *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), is misdirected. *Keeton* is distinguishable from both *Calder* and the instant case. In *Keeton* the defendant was a nationally published magazine; in *Calder* and here, the moving defendants were individuals employed by magazines. As the Court noted in *Keeton,* "jurisdiction over an employee does not automatically

follow from jurisdiction over the corporation which employs him." '465 U.S. at 781 n. 13, 104 S.Ct. at 1482 n. 13. Thus, although California may well have had jurisdiction,. according to *Keeton,* over the magazine that published the doctors' article, it does not follow that by the same rule California has jurisdiction over the doctors.

Although we cannot conclude that *Calder* is precisely analogous, *Calder* does not preclude the possibility that acts were expressly directed at the forum state. The libelous articles were written about the product of a California corporation, and the Swedish doctors were allegedly aware of the California affiliation. Moreover, the Swedish doctors allegedly intended their actions to cause harm in California. According to Core–Vent, the doctors wrote the articles with the express purpose of driving Core–Vent out of business.

Nor does *Calder* preclude us from deciding that the harm was suffered in California. The Swedish doctors argue that acts intended to harm a corporation cannot be said to be directed at any particular geographic location, and thus *Calder* does not apply to any case in which the plaintiff is a corporation. We must reject this contention. Such a categorical approach is antithetical to *Calder*'s admonishment that the personal jurisdiction inquiry cannot be answered through the application of a mechanical test but instead must focus on the relationship among the defendant, the forum, and the litigation within the particular factual context of each case. *Calder*, 465 U.S. at 789, 104 S.Ct. at 1487. Moreover, other circuits have implicitly rejected this argument, applying *Calder* without comment in cases with corporate plaintiffs. *See, e.g., First American First v. National Ass'n of Bank Women*, 802 F.2d 1511, 1517 (4th Cir.1986); *Blue Ridge Bank v. Veribanc, Inc.*, 755 F.2d 371 (4th Cir.1985); *see also Paccar Int'l, Inc. v. Commercial Bank of Kuwait*, 757 F.2d 1058, 1064 (9th Cir.1985) (suggesting by negative implication that the *Calder* analysis could apply in some situations where a corporation was the plaintiff). Thus, instead of easy categorization, determining where the brunt of the harm is felt requires a difficult case-specific analysis.

Here, there are powerful arguments on both sides. Unlike the corporation in *Dillon*, Core–Vent's principal place of business was in the forum state and thus any economic effects were arguably ultimately felt there. On the other hand, the brunt of the harm was perhaps felt most strongly where the libelous statements affected business most

significantly. Core–Vent does not allege that this effect was felt most significantly in California. "Though neither side decisively triumphs under this analysis," *Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir.1991), we will assume that purposeful availment prong has been satisfied. We need not decide this issue definitively, however, because we conclude in Part B that the exercise of jurisdiction would be unreasonable in any event. *See FDIC v. British–American Ins. Co., Ltd.*, 828 F.2d 1439, 1442 (9th Cir.1987) (declining to decide if the defendant had purposefully availed itself of the forum state in light of the conclusion that the exercise of jurisdiction would be unreasonable).

## B

"Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985). However, "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* Nevertheless, "jurisdictional rules may not be employed in such a way as to make litigation 'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage in comparison to his opponent.'" *Id.* at 478, 105 S.Ct. at 2185 (citations omitted).

In determining whether the exercise of jurisdiction over a nonresident defendant comports with "fair play and substantial justice," we must consider seven factors: (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient

and effective relief; and (7) the existence of an alternative forum. *Paccar,* 757 F.2d at 1065. None of the factors is dispositive in itself; instead, we must balance all seven. *Roth v. Garcia Marquez,* 942 F.2d 617, 623 (9th Cir.1991). We consider each factor in turn.

### 1

■ We first consider the extent of the Swedish doctors' purposeful interjection into the forum state. Although perhaps sufficient to meet the purposeful availment test, the Swedish doctors' contacts with the forum state are nevertheless attenuated. Some of our cases have suggested that once the minimum contacts threshold is met the degree of intrusion into the forum becomes irrelevant. *See Corporate Invest. Business Brokers v. Melcher,* 824 F.2d 786, 787 (9th Cir.1987). We made plain in our very first case to articulate the reasonableness factors, however, that the extent of interjection is to be considered:

> Even if there is sufficient 'interjection' into the state to satisfy the [purposeful availment prong], the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction under the [reasonableness prong].

*Insurance Company of North America v. Marina Salina Cruz,* 649 F.2d 1266, 1271 (9th Cir.1981). We went on to conclude, "[t]he smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise." *Id.* This is consistent with the approach of the Supreme Court. In *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184, for example, the Court stated that the minimum contacts must be evaluated "in light of" the reasonableness factors, suggesting that the minimum contacts and reasonableness factors occupy a sliding scale. Similarly, as one commentator noted, the Court in *Asahi Metal Industry Company v. Superior Court,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), suggested that "a greater volume of additional connections is required to justify the exercise of jurisdiction" when the reasonableness factors weigh in the defendant's favor. *See* Earl M. Maltz, *Unraveling the Conundrum of the Law of Personal Jurisdiction: A Comment on Asahi Metal Industry Co. v. Superior Court of California,* 1987 Duke L.J. 669, 689–90. In any event, the cases purporting not to consider the extent of contacts are ambiguous; although claiming that the degree of interjection is irrelevant, the cases have explicitly considered the extent of contacts in deciding how much weight to give other factors. *Compare, e.g., Sinatra v. National Enquirer,* 854 F.2d 1191, 1199 (refusing to consider the extent of availment), *with id.* at 1199 (looking at continuing contacts with forum state in determining burden). In short, we conclude that notwithstanding cases suggesting otherwise, we must consider the exiguity of the Swedish doctors' contacts with California in conducting the balance. Since the doctors' contacts were attenuated, this factor weighs in their favor. However, we cannot say that it weighs heavily in their favor given our assumption that they were sufficient to meet the purposeful availment prong.

### 2

We next consider the burden on the Swedish doctors of defending a lawsuit in California. The Supreme Court has recognized that defending a lawsuit in a foreign country can impose a substantial burden on a nonresident alien. "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi,* 480 U.S. at 114, 107 S.Ct. at 1033. The burden in this case is particularly great because the Swedish doctors have no ongoing connection to or relationship with the United States. *Cf. Sinatra,* 854 F.2d at 1199 ("The continuing contacts between the [Swiss] [c]linic's United States-based agent and California translate into less of a litigation burden than if the Clinic maintained no physical presence or agent within the United States.").

Our cases have also been inconsistent in determining whether the corresponding burden on plaintiff in bringing the claims against the defendant in an alternate forum should lessen the impact of this factor on the overall reasonableness determination. *Compare,*

*e.g., Pacific Atlantic Trading Co. v. M/V Main Exp.,* 758 F.2d 1325 (9th Cir.1985) ("the burden on the defendant is the primary concern" and thus the possible burden on the plaintiff does not dilute the strength of this factor), *with Sinatra,* 854 F.2d at 1199 ("the burden on the defendant must be examined in light of the corresponding burden on the plaintiff"). We need not reconcile these standards today, however, because the burdens in this case fall asymmetrically. The burden on the Swedish doctors of defending in California would be substantially greater than the burden on Core–Vent in bringing their claims in Sweden. The doctors are individuals with little or no physical contacts with California. Core–Vent, on the other hand, is a large international corporation with worldwide distribution of its products. Regardless whether the burden on the plaintiff is considered, this factor weighs heavily in favor of the doctors.

Despite its strong weight, this factor alone is not dispositive. "Modern advances in communications and transportation have significantly reduced the burden of litigating in another country." *Sinatra,* 854 F.2d at 1199. While defending the lawsuit in California would be difficult for the Swedish doctors, it would not be impossible.

### 3

The next factor concerns the extent to which the exercise of jurisdiction would conflict with the sovereignty of the defendants' state. "[T]he foreign-acts-with-forum-effects jurisdictional principle must be applied with caution, particularly in an international context." *Pacific Atlantic Trading Co.,* 758 F.2d at 1330. "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi,* 480 U.S. at 115, 107 S.Ct. at 1034 (citation omitted). "[L]itigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist." *Sinatra,* 854 F.2d at 1199.

In determining how much weight to give this factor, we have focused on the presence or absence of connections to the United States in general, not just to the forum state. Sovereignty concerns weigh more heavily when the defendants have no United States-based relationships. *Id.* at 1191. For example, in *Sinatra,* we found it significant that the defendant—a Swiss clinic—had an agent in the United States who actively solicited business in California and considered California one of the clinic's best sources of American clients. *Id.* at 1191; *see also Asahi,* 480 U.S. at 112–13, 107 S.Ct. at 1032 (absence of agent or subsidiary in the United States enhanced sovereignty concerns); *FDIC v. British–American Ins. Co.,* 828 F.2d 1439, 1444 (9th Cir.1987) (absence of officer, affiliate or subsidiary in United States significant in evaluating sovereignty concerns). Here, the Swedish doctors are individuals with no United States-based relationships. Thus, the sovereignty factor also weighs heavily in the Swedish doctors' favor.

### 4

We next consider California's interest in adjudicating the suit. "California maintains a strong interest in providing an effective means of redress for its residents [who are] tortiously injured." *Sinatra,* 854 F.2d at 1200; *cf. Asahi,* 480 U.S. at 118–19, 107 S.Ct. at 1035 (weak state interest because plaintiff is non-resident of California). Here, when the allegedly libelous articles were published and when the lawsuit was brought, Core–Vent was incorporated and had its operations in California. This factor weighs in Core–Vent's favor.

### 5

The next factor concerns the efficiency of the forum. In evaluating this factor, we have looked primarily at where the witnesses and the evidence are likely to be located. *Id.* We decline to speculate where the evidence and witnesses are likely to be located in this case, however, because neither party has addressed this issue. The fact that the lawsuit will continue in California with other parties tips the efficiency factor in Core–Vent's favor.

### 6

■ We finally consider whether an alternate forum exists, as well as the convenience and effectiveness of relief for the plaintiff. Here, the claims against the Swedish doctors could possibly be brought in Sweden. The plaintiff bears the burden of proving the unavailability of an alternative forum. *Pacific Atlantic,* 758 F.2d at 1331. Core–Vent has not met its burden of proving that it would be precluded from suing the doctors in Sweden. "Doubtless [it] would prefer not to, but that is not the test." *Garcia Marquez,* 942 F.2d at 625.

The maintenance of a suit in Sweden may be costly and inconvenient for Core–Vent, but Core–Vent has not shown that its libel claims cannot be effectively remedied there. *See Sinatra,* 854 F.2d at 1201. Moreover, Core–Vent can get full relief from the remaining defendants in its action in California. The effectiveness of relief does not seem to be compromised by the dismissal of the doctors.

In any event, neither the Supreme Court nor our court has given much weight to inconvenience to the plaintiff. As we noted in *Garcia Marquez,* "no doctorate in astrophysics is required to deduce that trying a case where one lives is almost always a plaintiff's preference." 942 F.2d at 624. A mere preference on the part of the plaintiff for its home forum does not affect the balancing; indeed, this factor is insignificant in this case.

### 7

We conclude, based on these factors, that the Swedish doctors have presented a compelling case that the exercise of jurisdiction would not comport with fair play and substantial justice and would thus be unreasonable. We are not unmindful that California has a strong interest in providing a forum to those who are injured in its state. However, where the plaintiff is an international corporation and where the defendants are individual citizens of a foreign country who lack connections to the United States and whose purposeful interjection into the forum state has been very limited, that interest must give way. Requiring the doctors to submit to the jurisdiction of the court would impose substantial burdens on them and would interfere with the sovereignty of a foreign nation. The Supreme Court in *Asahi* indicated that a plaintiff seeking to hale a foreign citizen before a court in the United States must meet a higher jurisdictional threshold than is required when the defendant is a United States citizen. Indeed, commentators have suggested that the international factors were determinative in *Asahi. See, e.g.,* Maltz, *supra* Part III.B.A., at 689–91. We conclude that Core–Vent has not met this higher threshold here.

### IV

Core–Vent makes several additional arguments regarding the district court's refusal to exercise jurisdiction over Branemark. None has merit.

■ We reject the contention that the district court can exercise general jurisdiction over Branemark. In support of its claim that Branemark has had systematic and continuous contacts with California, Core–Vent alleges only that Branemark attended five medical conferences in California over the last four years. Branemark cannot be "haled into a jurisdiction as a result of random, fortuitous, or attenuated contacts." *Lake,* 817 F.2d at 1421.

■ We likewise reject the argument that Branemark agreed to submit to jurisdiction in California. In an unrelated patent infringement case, Core–Vent, Nobelpharma, and Branemark entered into a settlement agreement that provided, in part, that the enforcement of the agreement was to occur in California courts. That agreement has no bearing on this suit.

■ Core–Vent finally contends that because Nobelpharma, at Branemark's direction, filed suit against Core–Vent in California in an unrelated action, Branemark should be subject to personal jurisdiction in all cases involving Core–Vent. Core–Vent offers no support for the proposition that in such circumstances the exercise of jurisdiction is proper. We reject the argument.

## V

In sum, we conclude that the district court properly declined to exercise jurisdiction over the Swedish doctors.

AFFIRMED.

FERNANDEZ, Circuit Judge, concurring:

I agree with Chief Judge Wallace that purposeful availment can be found in this case.

However, based upon the authorities cited by Judge O'Scannlain and by Judge Wallace, I am convinced that it would be unreasonable to require the Swedish doctors to come to this country to litigate with Core–Vent. Surely we would impose unreasonable burdens upon these scientists, whose sole act was to write a couple of articles in Sweden with knowledge (or even intent) that some copies would reach our shores. If Core–Vent truly believes that it is important to sue these individuals for their actions and that it cannot obtain sufficient satisfaction by pursuing their alleged principal, Core–Vent can go to Sweden.

In fine, we need not decide whether our law is murky, ambiguous, or even inconsistent in places. I do not do so. Whether the atmosphere is fuliginous or crystalline, we can sure-footedly walk the path to the answer in this case.

Thus, I concur.

WALLACE, Chief Judge, dissenting:

The facts we must assess in this appeal, as alleged in Core–Vent's complaint, demonstrate that Drs. Albrektsson, Lekholm, Sennerby, and Branemark (collectively, the Swedish doctors) engaged in tortious conduct purposefully directed at Core–Vent, a resident of the forum state, and intended to cause harm in the forum state. After weighing the relevant factors, I conclude that the Swedish doctors have not presented a compelling argument that the district court's exercise of personal jurisdiction over them would be unreasonable. Therefore, I dissent.

In its first amended complaint, Core–Vent alleges that Drs. Albrektsson and Lekholm are paid consultants of Nobelpharma. To-

gether they co-authored an article published in the October 1989 edition of *Dental Clinics of North America* "that contained false and misleading comparisons of Core–Vent and Nobelpharma implants." Dr. Sennerby is a Nobelpharma-financed dentist, who in 1990, with Dr. Malmquist, a United States citizen, co-authored an article in the *International Journal of Oral and Maxillofacial Implants,* which falsely represented the success rate of Core–Vent's implants to be only 9.3%. In 1990, Drs. Albrektsson and Sennerby co-authored an article in the *International Journal of Prothodontics,* which misrepresented the relative success rates of Nobelpharma and Core–Vent implants, falsely stated that Core–Vent's implants did not meet the criteria for success, and falsely stated that Core–Vent's claims to the contrary were "unprofessional." Nobelpharma had the right to review these articles before they were submitted for publication.

Core–Vent does not allege that Dr. Branemark wrote any defamatory articles. Rather, it alleges he is a Nobelpharma director and that he, "by distributing funds otherwise not available from other sources, controlled the studies to exaggerate the success of [Nobelpharma's] implants and the alleged danger in purchasing from anyone else." It is further alleged that Dr. Branemark used the Nobelpharma funds at his disposal to "flood[ ] the profession with biased and misleading marketing publications which, while giving the appearance of scientific objectivity, are, in fact, biased articles written to promote the products of … Nobelpharma, and denigrate, through false comparative advertising, the products of competitors." Core–Vent further alleges that these publications "were circulated in this district to the damage of [Core–Vent]."

Dr. Nizick, the President and Chief Executive Officer of Core–Vent, has confirmed that the above allegations are "true and correct" to the best of his "knowledge and belief." The Swedish doctors assert in their declarations and in their brief that they are independent scholars, but they do not directly controvert any of Core–Vent's factual allegations, including the allegation that they hired

others to or were paid to write allegedly defamatory articles.

For purposes of this appeal, Core–Vent's allegations must be accepted as true. *Fields v. Sedgwick Associated Risks,* 796 F.2d 299, 301 (9th Cir.1986) (*Fields* ). The issue, then, is whether a federal district court may exercise jurisdiction over foreign defendants, who intentionally publish defamatory articles about a forum resident in the forum. Core–Vent bears the burden of establishing that jurisdiction over the Swedish doctors would be proper. *Data Disc, Inc. v. Systems Technology Assocs.,* 557 F.2d 1280, 1285 (9th Cir. 1977). However, because the district court relied only upon the parties' written submissions, Core–Vent need only make a prima facie showing of jurisdiction. *Id.* We review the holding of the district court on this issue de novo. *Fields,* 796 F.2d at 301.

Judge O'Scannlain's analysis leads him to conclude that jurisdiction is absent and would affirm the district court. Judge Fernandez writes separately, agreeing with me that there was purposeful availment, but voting that there is a lack of jurisdiction and, in effect, joining in the result of Judge O'Scannlain's opinion on reasonableness, stating his own reasons for his position. I take a third position, and write to demonstrate the failure of the Swedish doctors to meet their burden of proof to overcome Core–Vent's prima facie showing of jurisdiction.

As Judge O'Scannlain states, we use the following test to determine whether specific jurisdiction over a nonresident defendant is proper:

> (1) the nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or residents thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Lake v. Lake,* 817 F.2d 1416, 1421 (9th Cir. 1987). Although Judge O'Scannlain has cor-

rectly stated the jurisdictional test, I disagree with his application. I therefore turn to my analysis of the three factors described in *Lake.*

## I

The leading case dealing with purposeful direction is *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (*Calder* ). There, the Supreme Court determined that California courts could exercise jurisdiction over an editor and a reporter who caused a defamatory article to be published in Florida and circulated in California because the tortious conduct was "expressly aimed" at the forum state. As we have previously recognized, *Calder* stands for the proposition that purposeful availment is satisfied even by a defendant "whose only 'contact' with the forum state is the 'purposeful direction' of a *foreign* act having *effect* in the forum state." *Haisten v. Grass Valley Medical Reimbursement Fund,* 784 F.2d 1392, 1397 (9th Cir. 1986) (*Haisten* ). Nevertheless, Judge O'Scannlain reads *Calder* narrowly. His opinion seems to argue that but for the fact that "defendants knew that the brunt of the harm would be suffered in California," op. at 1486, jurisdiction would not have been found. In *Calder,* the fact that the author and editor knew the brunt of the harm from their article would be suffered in California was a factor that weighed in favor of purposeful direction, but it was not a prerequisite. *See Calder,* 465 U.S. at 788–89, 104 S.Ct. at 1486–87. To the contrary, the Court held that jurisdiction was proper because "petitioners [were] primary participants in an alleged wrongdoing intentionally directed at a California resident." *Id.* at 790, 104 S.Ct. at 1487.

In addition, Judge O'Scannlain's argument ignores one very important fact: the Supreme Court has already rejected the proposition that the brunt of the harm must be suffered in the forum. *Keeton v. Hustler Magazine,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) (*Keeton* ) (decided the same day as *Calder* ). In *Keeton,* the Court held that limited jurisdiction was proper even though it was "undoubtedly true that the bulk of the harm done to petitioner occurred outside [the forum]." *Id.* at 780, 104 S.Ct. at

1481. In fact, *Keeton* expressly recognized that a plaintiff may sue in any forum with which the defendant has minimum contacts and seek recovery for damages suffered in other forums. *Id.* Reading *Calder* and *Keeton* together, it is clear that Judge O'Scannlain's new test, which requires that a defendant "caus[e] harm, the brunt of which is suffered—and which the defendant knows is likely to be suffered—in the forum state," op. at 1486, is an erroneous statement of the law. No such requirement exists. Indeed, it is inconsistent with the teachings of the Supreme Court.

In an attempt to justify his interpretation of *Calder,* Judge O'Scannlain suggests that we have always read *Calder* narrowly. Op. at 1486. The opinion asserts that *Calder* does not mean that the "effects of libel are felt and jurisdiction exists wherever a corporate plaintiff resides." *Id., citing Casualty Assurance Risk Ins. Brokerage Co. v. Dillon,* 976 F.2d 596, 601 (9th Cir.1992). Even if this were true, it is not relevant because in this case the defamatory articles were actually published in the forum. As *Dillon* itself recognizes, the effects of libel are felt and jurisdiction is proper in any forum in which the article is actually published. *Id.; see also Keeton,* 465 U.S. at 776–78, 104 S.Ct. at 1479–80; *Sinatra v. National Enquirer,* 854 F.2d 1191, 1195 (9th Cir.1988) (*Sinatra*).

Judge O'Scannlain also finds a relevant distinction in the fact that Core–Vent is a corporation and the petitioner in *Calder* was an individual. Op. at 1486. This exposes a fundamental misperception of Judge O'Scannlain's analysis. His opinion focuses on the nature of Core–Vent, its contacts with the forum, and how it is affected by the harm. But the jurisdictional inquiry should focus on the Swedish doctors, their contacts with the forum, and their intent to cause harm. *See Keeton,* 465 U.S. at 780–81, 104 S.Ct. at 1481.

Judge O'Scannlain next asserts that "we [have] refused to apply the *Calder* effects test when the underlying action involved a contract dispute, not a tort." Op. at 1486,

citing *McGlinchy v. Shell Chem. Co.,* 845 F.2d 802, 817 (9th Cir.1988). This dicta is irrelevant because the underlying action in this case is libel—a tort—the same underlying action found in *Keeton* and *Calder.* It is also an incorrect statement of historical fact. *See Haisten,* 784 F.2d at 1399 (applying *Calder* analysis to insurance contracts).

Finally, Judge O'Scannlain suggests that analogy to *Calder* does not support a finding that the articles were expressly directed at California because the events underlying the articles did not occur in California and the articles were not researched through California sources. Op. at 1486. This ignores the fact that in *Calder,* the Court did not rely on the research methods employed in writing the story. *Calder,* 465 U.S. at 787 n. 6, 104 S.Ct. at 1485. Jurisdiction was found because the libelous story was published within the forum to the detriment of a forum resident. *Id.* at 789–90, 104 S.Ct. at 1487. As in *Calder,* the Swedish doctors were "primary participants in an alleged wrongdoing intentionally directed at a California resident, and jurisdiction over them is proper on that basis." *Id.* at 790, 104 S.Ct. at 1487.

Ironically, Judge O'Scannlain then disavows his analysis of *Calder* and ultimately "assumes that the purposeful availment prong has been satisfied." Op. at 1487. I would go one step further based on *Keeton* and *Calder* and hold expressly that Core–Vent's uncontroverted allegations are sufficient to establish a prima facie case that the Swedish doctors have purposefully directed their tortious conduct at the forum. On this issue, Judge Fernandez has joined my analysis. Thus, for purposes of this case, a majority of the panel agree that purposeful availment has been established.

## II

The second part of the *Lake* test for jurisdiction requires that the claim arise out of or relate to the Swedish doctors' forum-related activities. As to this issue, the Swedish doctors raise no defense and I conclude that this part of the test was met.

## III

I now turn my attention to the third part of the *Lake* test: reasonableness. Because Judge Fernandez and I agree that Core–Vent has met its burden of showing that the Swedish doctors purposefully directed their conduct at the forum, jurisdiction is presumed to be reasonable. *Brainerd v. Governors of the Univ. of Alberta,* 873 F.2d 1257, 1260 (9th Cir.1989) (*Brainerd*); *Haisten,* 784 F.2d at 1397. The burden of proof is now on the doctors to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985) (*Burger King*); *Brainerd,* 873 F.2d at 1260; *Haisten,* 784 F.2d at 1397, 1400.

We have in the past, as Judge O'Scannlain does now, referred to seven questions that may be raised in determining whether jurisdiction is reasonable. However, Judge O'Scannlain's analysis of several of these is erroneous.

The first pertains to the extent of the Swedish doctors' contacts with the forum. Judge O'Scannlain concludes that the contacts are "attenuated." But how does this help? By definition, foreign acts with forum effects will be "attenuated" to some extent because the acts which give rise to the effects occur outside the forum. The Swedish doctors argue only that Core–Vent has not proven that their acts were expressly aimed at California or that the brunt of the harm was suffered in California. These arguments are the same as those analyzed in part I and must fail for the same reasons.

On the other hand, Core–Vent has alleged that the Swedish doctors wrote the articles at the behest of and with the financial backing of Nobelpharma, with the purpose of causing Core–Vent harm. Core–Vent also alleges that the articles were circulated in California, causing it to lose business in California. In other words, Core–Vent has alleged that the doctors were "primary participants in an alleged wrongdoing intentionally directed at a California resident." *Calder,* 465 U.S. at 790, 104 S.Ct. at 1487. Because these uncontroverted allegations must be accepted as true for purposes of this appeal, *Fields,* 796 F.2d at 301, the resolution of this first inquiry weighs strongly in Core–Vent's favor.

The second inquiry relates to the burden on the Swedish doctors of defending a lawsuit in California. Although I agree with Judge O'Scannlain that this factor weighs in the doctors' favor, it does so lightly. The Swedish doctors argue that "the requisite travel, involving a distance of 5454 miles across nine time zones, is an onerous burden." The convenience of modern transportation and telecommunications facilities, however, has eased this burden to the point that well-educated, well-financed professionals would not be unduly burdened by the travel requirements. *See Sinatra,* 854 F.2d at 1199.

Judge Fernandez appears to put his primary reason for concurring in the result of Judge O'Scannlain's reasonableness analysis on this single factor. But we are required to balance all factors. *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 840 (9th Cir.1986), *citing Olsen by Sheldon v. Government of Mexico,* 729 F.2d 641, 649 (9th Cir.) (*Olsen*) ("To determine reasonableness, we consider the relative significance of each factor and balance them all."), *cert. denied,* 469 U.S. 917, 105 S.Ct. 295, 83 L.Ed.2d 230 (1984). In doing so, this single factor cannot, in my judgment, rule the result.

The Swedish doctors' next argument is that defending in a foreign legal system would be extremely burdensome. *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 114, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987). This oft-repeated argument is true, generally; but the jurisdictional inquiry is made on a case-by-case basis. The Swedish doctors do not provide any evidence that defending in a foreign legal system would be burdensome *to them.* They do not suggest that it would be difficult to transport evidence, witnesses, or attorneys from Sweden to California. *See Olsen,* 729 F.2d at 649. In fact, Core–Vent has alleged that Nobelp-

harma's attorneys are conducting the Swedish doctors' defense. This would decrease any burden on the Swedish doctors significantly. I do not suggest that defending in California would place no burden at all on the Swedish doctors. Certainly they would be inconvenienced. But " '[u]nless such inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction.' " *Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir.1991), *quoting Hirsch v. Blue Cross, Blue Shield*, 800 F.2d 1474, 1481 (9th Cir.1986).

The third question relates to conflict with the sovereignty of Sweden. Ordinarily, as Judge O'Scannlain suggests, this factor would weigh heavily in the Swedish doctors' favor. But the Swedish doctors have not presented arguments that implicate a significant interference with Sweden's sovereignty in this case. They argue that this case would interfere with the "right of Swedish courts to resolve disputes involving Swedish citizens." But this case also involves an American corporation, and the application of California law. The Swedish doctors argue that they have direct professional ties with governmental institutions. But these ties are not alleged to be implicated in this case. Finally, the doctors argue that Core–Vent has not demonstrated that jurisdiction would not impinge upon Sweden's sovereignty. This is true, but it misperceives the location of the burden of proof. The burden is on the Swedish doctors to make a compelling case that jurisdiction would be unreasonable, *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184–85, not the other way around.

The fourth inquiry relates to the forum state's interest in adjudicating the suit. "False statements of fact harm both the subject of the falsehood *and* the readers of the statement." *Keeton*, 465 U.S. at 776, 104 S.Ct. at 1479. California has a strong interest in providing a forum in which its residents can seek redress from those who knowingly cause them injury there. *See Calder*, 465 U.S. at 790, 104 S.Ct. at 1487. In addition, California has an interest in "employ[ing] its libel laws to discourage the deception of its citizens." *Keeton*, 465 U.S. at 776, 104 S.Ct. at 1479. These interests require that this factor be weighed heavily in Core–Vent's favor.

I agree with Judge O'Scannlain's weighing of the final three factors, but I also conclude that they are not important or determinative.

## IV

In this case, the Swedish doctors' purposeful direction of tortious activity into California and the state's strong concomitant interest in providing a forum in which its residents may seek redress of their grievances must be weighed against the burden on the Swedish doctors in having to litigate in a foreign legal system and any possible interference with Sweden's sovereignty. I conclude that the Swedish doctors have failed to meet their burden requiring them to present a compelling case that jurisdiction would be unreasonable. The Swedish doctors purposefully directed their tortious conduct into the forum for the purpose of harming Core–Vent. They should not now be heard to complain that it would be unfair to require them to defend themselves in a forum in which they intended their tortious conduct to have its effect. *See Brainerd*, 873 F.2d at 1260; *Haisten*, 784 F.2d at 1402. Traditional notions of fair play and substantial justice require no less.

I respectfully dissent.