**John DOE a/k/a Brian Sapient, Plaintiff,**

v.

**Uri GELLER and Explorologist, Ltd, Defendants.**

**No. C 07–2478 VRW.**

United States District Court, N.D. California.

Feb. 4, 2008.

Corynne Mcsherry, Jason M. Schultz, Marcia Clare Hofmann, Electronic Frontier Foundation, San Francisco, CA, for Plaintiff.

Jeffrey Michael Vucinich, Clapp Moroney Bellagamba & Vucinich, San Bruno, CA, Richard Winelander, Baltimore, MD, for Defendants.

## ORDER

VAUGHN R. WALKER, Chief Judge.

This dispute concerns the copyright infringement takedown provisions under the Digital Millennium Copyright Act ("DMCA"). See 17 USC § 512(f) (2000). Plaintiff claims that defendants Explorologist, Ltd ("Explorologist") and Uri Geller ("Geller") knowingly misrepresented to the YouTube file-sharing company that one of plaintiff's video postings infringed defen-

dants' copyrights. 17 USC § 512(f). Plaintiff seeks damages from the alleged misrepresentation, as well as a declaratory judgment of noninfringement. Doc # 1. Defendants respond with a motion to dismiss. Doc## 24, 25. Defendants argue that the court lacks subject matter jurisdiction and personal jurisdiction because the takedown notice that was sent to YouTube in San Bruno, California, was transmitted from outside the United States. Defendants also move to dismiss on the grounds that the complaint's allegations surrounding the content of the takedown notice are insufficient under FRCP 9(b) and FRCP 8(a). Lastly, defendants move to transfer venue to the Eastern District of Pennsylvania, where a related action is proceeding. For the reasons set forth below, defendants' motion to dismiss for lack of personal jurisdiction is GRANTED.

I

The YouTube internet video website is an entirely user-driven medium. Anyone with access to the internet can sign up for a YouTube account and upload any video file to YouTube's servers so that the file may be accessed and viewed anywhere in the world, all for free. For instance, a family might post a video of a child's soccer game in California so that grandparents may view it in Illinois. Or a pair of young writers might write, film and produce their own television show and broadcast the episodes in serial form online, as in the case of the show "lonelygirl15," which drew millions of viewers on YouTube. See Virginia Heffernan and Tom Zeller, *Well, It Turns Out That Lonelygirl Really Wasn't*, N.Y. Times C1 (Sept 13, 2006). Politicians, social activist organizations and nonprofit groups use YouTube to spread their messages. See Jose Antonio Vargas, *YouTube Creates Issues Debate*, Wash Post (Aug 8, 2007), at http://blog.washingtonpost.com/the-trail/2007/08/08/youtube_creates_is-sues_debate.html (last visited Dec 4, 2007); Moises Naim, *The YouTube Effect*, Foreign Policy (Jan/Feb 2007), at ht tp://www.foreignpolicy.com/story/cms.php?story_id=3676 (last visited Dec 4, 2007); Yinka Adegoke, *Nonprofits turn to YouTube to raise awareness, funds*, Reuters UK (Oct 19, 2007), at http://uk.reuters.com/articl e/homepageCri-sis/idUK119280972697._CH_.242020071019 (last visited Dec 4, 2007). By nearly eliminating the cost of mass media distribution, YouTube offers its users unparalleled opportunities for free expression. See Richard Waters and Kevin Allison, *How to set a course for a shooting star*, Financial Times (Oct 8, 2006), at http://www.ft.com/cms/s/0 /7261e5de–56fc–11db–9110–0000779e2340.html (last visited Dec 4, 2007).

But because digital content is so easy to generate, the potential for copyright and trademark violations is enormous. See Waters and Allison, supra. Claiming fair use, a YouTube user might post a homemade video that takes scenes from his favorite movie and sets them to his favorite song, using both without permission. See, for example, *My Body is a Cage*, at http://www.youtube.com/watch?v=Pyp34v 6Lmcc (mixing the climactic scene from Sergio Leone's *Once Upon a Time in the West* with the Arcade Fire's *My Body is a Cage*) (garnering over 550,000 hits as of Jan 29, 2008). More troublingly, a YouTube user might film his favorite musician's live performance and post the footage on YouTube, potentially discouraging other fans from purchasing the musician's live performance DVD. YouTube does not actively monitor the content of the postings on its website.

To address these and other concerns, Congress passed the DMCA in 1998. 17 USC § 512 (2000). Section 512(c) lays out a detailed process allowing a copyright

owner who observes infringing content on a website like YouTube to have the content taken down. The copyright owner must send a notification to YouTube ("takedown notice") identifying the offending video and asserting under penalty of perjury that the sender is the copyright owner and has a good faith belief that the video infringes the sender's copyrights. 17 USC § 512(c)(3). YouTube then must remove the material from its servers or face infringement liability itself. 17 USC § 512(c)(1) (C). The infringing user might also suffer penalties under YouTube's terms of use, such as suspension of his account. See YouTube Terms of Use ¶ 7, at http://www.youtube.com/t/terms (last visited Dec 4, 2007). Conversely, copyright owners who abuse the takedown procedure are subject to liability. At issue in this case is the misrepresentation provision of the DMCA, which provides, in relevant part:

> Any person who knowingly materially misrepresents [in a takedown notice to an internet service provider] * * * that material or activity is infringing * * * shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer * * * who is injured by such misrepresentation[ ] as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing * * *.

17 USC § 512(f).

## II

Defendant Explorologist is a private company registered in London, England. Doc # 1 at ¶ 5. Defendant Geller is a resident of England and a director and controlling shareholder of Explorologist. Doc # 1 at ¶¶ 4, 6. Geller is also a performer who claims to have psychic powers such as the ability to bend spoons with his mind. Doc # 1 at ¶ 14. Plaintiff is John Doe AKA Brian Sapient ("Sapient") who,

as part of his "controversial religious beliefs," is a member of the "Rational Response Squad," which is committed to "debunking what it maintains are irrational beliefs and theories." Doc # 1 at ¶¶ 3, 12. As part of that mission, plaintiff "rel[ies] on YouTube to reach thousands of audience members and promote [his] activist messages and campaigns online." Doc # 1 at ¶ 12. Plaintiff uses the alias "Brian Sapient" because "he receives a substantial amount of abusive correspondence, including threats of physical harm" due to his beliefs. Doc # 1 at ¶ 3. Given his attention to "the ongoing debate between evolution and creationism" (see Doc # 30 at 2), plaintiff's choice of "Sapient" as a pseudonym is presumably a reference to evolutionary taxonomy, or relatedly, is a derivative of *sapientia*, Latin for wisdom.

Plaintiff eventually set his sight on Geller. On November 15, 2006, plaintiff uploaded a video clip (the "NOVA video") to YouTube. The video originally aired on the NOVA television program and features an illusionist named James Randi challenging Geller's powers. Doc # 1 at ¶¶ 13–14. The NOVA video includes "three seconds" of *another* video clip in which a man named Dr C J Hughes describes Geller's asserted psychic powers ("Hughes clip"). Doc # 1 at ¶ 14.

It is that second clip—the Hughes clip within the NOVA video—that prompted the instant dispute. Explorologist owns the copyright to the Hughes clip. Doc # 1 at ¶ 14. Plaintiff alleges that on March 23, 2007, an agent of defendants sent YouTube a takedown notice identifying plaintiff's post as infringing and demanding that the video be removed. Doc # 1 at ¶ 15. Later that day, YouTube informed plaintiff that the NOVA video had been flagged and removed in response to a copyright infringement takedown notice from Explorologist. Doc # 1 at ¶ 16. YouTube sus-

pended plaintiff's account for more than two weeks, during which time all his posted videos were unavailable. Doc # 1 at ¶ 17.

On May 7, 2007, Explorologist filed a complaint in the Eastern District of Pennsylvania, where plaintiff resides. See Doc # 29 (Notice of Pendency of other Action or Proceeding). That complaint alleges that by posting the NOVA video, Sapient committed copyright infringement under British law, commercial disparagement and appropriation of name or likeness. See Doc # 26 Exh 5.

On May 8, 2007, plaintiff filed the instant complaint. Count I of the complaint alleges that defendants "knowingly materially misrepresent[ed]" to YouTube in the takedown notice that plaintiff's posting infringed defendants' copyrights. Doc # 1 at ¶¶ 18–23; 17 USC § 512(f). Plaintiff alleges that his posting of the NOVA video does not infringe defendants' copyrights and therefore the takedown notice was a misrepresentation. Doc # 1 at 19. Plaintiff then alleges that defendants "knew or should have known" that the video was noninfringing and that defendants "did not act with reasonable care or diligence before sending" the "takedown notice." Doc # 1 at ¶ 20. Count II seeks a declaratory judgment that plaintiff's video is noninfringing under the First Amendment and under United States copyright law. Doc # 1 at ¶¶ 24–27. Plaintiff seeks damages, declaratory and injunctive relief, attorneys' fees and costs.

### III

■ In addition to defendants' challenges on the merits, defendants argue that the court lacks both subject matter and personal jurisdiction. Because the court agrees that this case should be dismissed for lack of personal jurisdiction, defendants' other arguments need not be addressed. The Supreme Court has held that if "a district court has before it a straightforward personal jurisdiction issue presenting no complex question of state law, and the alleged defect in subject-matter jurisdiction raises a difficult and novel question, the court does not abuse its discretion by turning directly to personal jurisdiction." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) (footnote omitted); consider *Sinochem Intl. Co. v. Malaysia Intl. Shipping Corp.*, —— U.S. ——, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007) (holding that a district court may address a *forum non conveniens* plea before considering personal jurisdiction or subject matter jurisdiction).

■ No federal court has ever addressed subject matter jurisdiction under § 512(f), and the subject matter jurisdiction issue in this case is complex. Defendants argue the court lacks subject matter jurisdiction because defendants' act of sending the YouTube takedown notice occurred in England, where the fax and email were sent. That fact is significant because United States copyright laws do not apply extraterritorially. See *Subafilms, Ltd. v. MGM–Pathe Comm'ns Co.*, 24 F.3d 1088, 1094 (9th Cir.1994). But copyright law is especially unsettled when it comes to cross-border communications. Compare *Allarcom Pay Television, Ltd. v. Gen. Instr. Corp.*, 69 F.3d 381, 387 (9th Cir.1995) (finding no jurisdiction over a television broadcast from the United States to Canada), with *Los Angeles News Service v. Reuters Television Intl., Ltd.*, 149 F.3d 987 (9th Cir.1998) (finding jurisdiction over a television broadcast from the United States to Africa); see William Patry, *Choice of Law and International Copyright*, 48 Am J Comp L 384, 462 n362 (2000) (noting the discrepancy between *Allarcom* and *Reuters*); Andreas P Reindl, *Choosing Law in Cyberspace: Copyright*

**1004**

*Conflicts on Global Networks,* 19 Mich. J Int'l L 799, 823 n84 (1998) (criticizing *Allarcom* but noting that the European Community has adopted that approach); see also *National Football League v. PrimeTime 24 Joint Venture,* 211 F.3d 10, 13 (2d Cir.2000) (rejecting *Allarcom* and holding that "each step" in the transmission procedure can give rise to jurisdiction). It is unclear how that line of precedent would apply to cross-border communications such as defendants' fax and email. Plaintiff suggests that copyright "authorization" law, which permits jurisdiction over foreign acts that authorize violations in the United States, is instructive, but that body of case law is inapposite. Authorization law and other species of vicarious infringement depend on the particular derivative relationship between direct and indirect copyright infringement. See *Subafilms,* 24 F.3d at 1090–93. Here, however, plaintiff alleges neither direct nor indirect infringement. Overall, copyright law does not provide a satisfactory answer whether United States courts have jurisdiction over cross-border communications in § 512(f) suits.

In fact, as an alleged violation of § 512(f) is not a copyright claim, copyright law may be of little help. Plaintiff raises a misrepresentation claim. Accordingly, it may be improper to import jurisdiction principles from one specific context—the creation and regulation of property rights—to a very different context for which those principles were not designed. See Reindl, supra, at 824. Instead, perhaps misrepresentation law rather than copyright law should control the subject matter jurisdiction analysis.

Even so, treating this case as an ordinary tortious misrepresentation case does not much clarify matters. Following common law tort principles, the court might be inclined to rule that the situs of the act is the place where a fax or email was re-

ceived, not sent. But the best support for that statement is found not in any recent, binding precedent but rather in the First Restatement of Conflict of Laws, published in 1934. See *Restatement of Conflict of Laws* § 377 (1934) (defining the "place of wrong" as "the state where the last event necessary to make an actor liable for an alleged tort takes place"); see also cmt a, illus 5, 7. The court might analogize to other federal misrepresentation statutes (see *Bersch v. Drexel Firestone, Inc.,* 519 F.2d 974, 988–89, 991 (2d Cir.1975) (securities fraud); 13 USC § 1343 (wire fraud)), but these too appear to provide scant guidance.

Suffice it to say, subject matter jurisdiction is neither clear nor definitive. Accordingly, the court is "convinced that the challenge to the court's subject-matter jurisdiction is not easily resolved and that the alternative ground [of personal jurisdiction] is considerably less difficult to decide." *Cantor Fitzgerald, LP v. Peaslee,* 88 F.3d 152, 155 (2d Cir.1996), cited in *Ruhrgas,* 526 U.S. at 588, 119 S.Ct. 1563.

### IV

■ Defendants argue that the court lacks personal jurisdiction over both Explorologist and Geller because each has insufficient minimum contacts with California. Plaintiff responds that the court has specific jurisdiction over defendants arising out of the takedown notice sent to YouTube in California.

### A

■ In a motion challenging personal jurisdiction, the plaintiff, as the party seeking to invoke the jurisdiction of the federal court, has the burden of establishing that jurisdiction exists. See *Data Disc, Inc. v. Systems Tech. Assocs., Inc.,* 557 F.2d 1280, 1285 (9th Cir.1977). When the motion to dismiss constitutes a defen-

dant's initial response to the complaint, the plaintiff need only make a prima facie showing that personal jurisdiction exists. See *Data Disc*, 557 F.2d at 1285.

■ Sapient does not raise a general jurisdiction argument and asserts only that the court may exercise specific jurisdiction over defendants. Under California law, "[a] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal. C.C.Proc. Code § 410.10. Given the broad reach of California's long-arm statute, the court need only satisfy itself that its exercise of jurisdiction does not exceed constitutional due process limitations. See *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir.1986).

The Ninth Circuit has established a three-part test for determining when specific jurisdiction may be exercised:

1. The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.

2. The claim must be one which arises out of or results from the defendant's forum-related activities.

3. Exercise of jurisdiction must be reasonable.

*Data Disc*, 557 F.2d at 1287.

■ The Ninth Circuit has since expanded the first prong, also known as the purposeful availment or purposeful direction requirement, "apply[ing] different purposeful availment tests to contract and tort cases." *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir.1995); see *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802–03 (9th Cir.2004). Purposeful availment in tort cases is ana-

lyzed under the effects test from *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984):

As we have previously recognized, *Calder* stands for the proposition that purposeful availment is satisfied even by a defendant "whose only 'contact' with the forum state is the 'purposeful direction' of a foreign act having effect in the forum state." Based on these interpretations of *Calder*, the "effects" test requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.

*Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir.2002) (internal citations omitted). Personal jurisdiction may flow from a single contact with the forum state if the claim "arise[s] out of that particular purposeful contact of the defendant with the forum state." *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir.1987).

Plaintiff argues that defendants' single act of sending the takedown notice to You-Tube in California is sufficient to establish personal jurisdiction in California courts.

**B**

The court has its doubts whether plaintiff can demonstrate "purposeful direction" into California under the first prong of the jurisdiction test. Although defendants allegedly sent the takedown notice to You-Tube in California, Sapient resides in Pennsylvania. Sapient is correct that there is no presumption that a plaintiff is harmed in his domiciliary only (see *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) (holding that a New Hampshire court could exercise personal jurisdiction in a libel case though plaintiff resided in New York and defendant resided in Ohio)), but

the only activity that occurred in California was YouTube's act of disabling access to plaintiff's video. Other than by reciting the language of § 512(f), plaintiff has not explained how the removal of the video is an injury "sufficient" to establish personal jurisdiction over defendants in California. See *Yahoo! v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1207 (9th Cir.2006) (rejecting the "brunt of the harm" test in favor of the less-restrictive "jurisdictionally sufficient amount of harm" test). Instead, plaintiff's claimed injuries are more likely to be suffered in Pennsylvania. See *Bancroft & Masters v. Augusta Natl. Inc.*, 223 F.3d 1082 (9th Cir.2000) (finding personal jurisdiction in California because the Georgia defendant mailed a letter to a domain name registry in Virginia thereby interfering with the domain name rights of plaintiff, who lived in California).

The court does not rest its decision on purposeful direction grounds, however, because that body of precedent does not apply easily to the facts here. Plaintiffs rarely claim an injury in a state other than their home state, and plaintiffs rarely allege the kind of metaphysical internet free speech injuries or electron-based injuries that Sapient alleges here. See Doc # 1 at ¶¶ 17, 23, 26. The cases cited by both parties are all distinguishable easily on one or both of those grounds. See *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *Calder*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804; *Menken v. Emm*, 503 F.3d 1050 (9th Cir.2007); *Yahoo!*, 433 F.3d 1199; *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122 (9th Cir. 2003); *Dole Food*, 303 F.3d 1104; *Bancroft & Masters*, 223 F.3d 1082; *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208 (5th Cir. 1999); *Resnick v. Rowe*, 283 F Supp 2d 1128 (D.Hawai'i 2003); *Cody v. Ward*, 954 F.Supp. 43 (D.Conn.1997). The court has no affirmative, binding precedent and no clear guidance. Accordingly, the court declines to rule on the "purposeful direction" prong of the jurisdiction test, either under the *Calder* effects test (as plaintiffs urge) or under the theory that defendants' tortious conduct occurred in California (consider *Knipple v. Viking Communications, Ltd.*, 236 Conn. 602, 610, 674 A.2d 426 (1996) (holding that "[f]alse representations entering Connecticut by wire or mail constitute tortious conduct in Connecticut")).

## C

Instead, Sapient's case for personal jurisdiction flounders immediately once the court considers the third prong of the jurisdiction test, which is that jurisdiction must be reasonable. See *FDIC v. British–American Ins. Co.*, 828 F.2d 1439, 1442 (9th Cir.1987) (declining to rule on purposeful availment in light of the conclusion that the exercise of jurisdiction would be unreasonable).

■ Defendants have the burden of making a "compelling case" that exercise of jurisdiction would be unreasonable; in other words, that it would not comport with fair play and substantial justice. See *Schwarzenegger*, 374 F.3d at 802. Defendants must show that any asserted unfairness could not be alleviated by less restrictive means such as conflict of law rules or an accommodating venue transfer. See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Jurisdiction is reasonable if "under the totality of the circumstances the defendant could reasonably anticipate being called upon to present a defense in a distant forum." *FDIC*, 828 F.2d at 1442.

■ The Ninth Circuit has set out seven factors to be weighed in evaluating the reasonableness of exercising personal jurisdiction in a particular case:

(1) the extent of the defendants' purposeful interjection into the forum state's affairs;

(2) the burden on the defendant of defending in the forum;

(3) the extent of conflict with the sovereignty of the defendants' state;

(4) the forum state's interest in adjudicating the dispute;

(5) the most efficient judicial resolution of the controversy;

(6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and

(7) the existence of an alternative forum.

*Harris Rutsky*, 328 F.3d at 1132; see *Insurance Co. of North Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1270 (9th Cir. 1981) ("There is no mechanical or quantitative test for jurisdiction under the *International Shoe* reasonableness standard, and we shall not attempt to list all the factors that might, in a different case, be part of an assessment of the reasonableness of subjecting a defendant to jurisdiction. For purposes of the present case we conclude that the following seven factors are relevant * * *."). The seven factors must be balanced against one another to determine reasonableness. See *Roth v. Garcia Marquez*, 942 F.2d 617, 623, 625 (9th Cir. 1991). In this case, each factor suggests that jurisdiction is unreasonable.

### 1

■■■■ The extent of defendants' "purposeful interjection" into California was not substantial, comprising only the single takedown notice sent to YouTube. "Even if there is sufficient 'interjection' into the state to satisfy the [purposeful availment prong], the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction under the [reasonableness prong].* * * The smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise." *Insurance Co. of North Am.*, 649 F.2d at 1271, quoted in *Core–Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1488 (9th Cir.1993). In *Core–Vent*, the Ninth Circuit found defendant's libelous article circulated in California to be an "attenuated" contact with California—even though defendants "allegedly intended their actions to cause harm in California"—and the court ruled that the purposeful interjection factor weighed in defendants' favor. *Core–Vent*, 11 F.3d at 1487, 1488. Here, defendants' takedown notice is similar to the article in *Core–Vent* because it was a single communication sent from Europe. In fact, defendants' contacts with California are even more attenuated because, although the takedown notice was sent to California, it was not aimed at any California resident. Thus, whether defendants intended to create an effect in California or even if defendants committed a tort in California, defendants' purposeful interjection into California is not extensive. Accordingly, this factor weighs against personal jurisdiction.

### 2

■■■■ The second factor—the burden on the defendants—weighs against jurisdiction slightly. "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 114, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). The use of an agent in the United States might alleviate a foreign defendant's burden (see *Core–Vent*, 11 F.3d at 1488), but defendants do not have such an agent. And there is no indication that defendants or their representatives "frequently travel to California

on business." *Harris Rutsky*, 328 F.3d at 1132–33; see Doc # 33–2 (discussing defendants' travel in the United States and Europe). On the other hand, modern technology has reduced the burden of litigating in another country (see *Sinatra v. National Enquirer*, 854 F.2d 1191, 1199 (9th Cir.1988)), and defendants' personal involvement with the litigation is not likely to be extensive. Explorologist's claim of undue burden is far less compelling than Geller's, of course, because Explorologist has already sued Sapient in Pennsylvania. Litigation in California would force Explorologist to fight a two-front war in the United States, but much of the burden of litigating in the United States (such as selecting and monitoring American counsel) has already been done. Because of the Pennsylvania lawsuit, defendants' burden of litigating in California is not overwhelming, but it is a burden nevertheless, and this factor weighs against jurisdiction slightly.

### 3

 "[L]itigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist." *Sinatra*, 854 F.2d at 1199. The court should not dwell upon this consideration. See *Harris Rutsky*, 328 F.3d at 1133, citing *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1333 (9th Cir.1984) ("If [this factor were] given controlling weight, it would always prevent suit against a foreign national in a United States court.").

 The court may presume that England has a sovereign interest in adjudicating a claim against a British corporation and a British resident. See *Harris Rutsky*, 328 F.3d at 1133. Moreover, the video clip at the heart of the dispute was filmed in England (see Doc # 26 Exh 5 at ¶ 7) and features Dr Hughes, whom defen-

dants claim is British (see Doc # 26 Exh 2). Defendants' lack of an agent in the United States is also relevant to sovereignty considerations. See *Core–Vent*, 11 F.3d at 1489; *Roth*, 942 F.2d at 623–24. Accordingly, this factor weighs against jurisdiction slightly.

### 4

 The fourth factor—the forum state's interest in adjudicating the dispute—weighs against personal jurisdiction. Sapient resides in Pennsylvania, not California. "Because the plaintiff is not a California resident, California's legitimate interests in the dispute have considerably diminished." *Asahi*, 480 U.S. at 114, 107 S.Ct. 1026. Sapient alleges no violations of California law. See *FDIC*, 828 F.2d at 1444. YouTube is a California company but is not a party to this litigation. California has little interest in the outcome of this case. See *Corporate Inv. Bus. Brokers v. Melcher*, 824 F.2d 786, 791 (9th Cir.1987).

Sapient's only argument to the contrary is that "California has an abiding interest in protecting YouTube videos from improper takedown notices" (see Doc # 30 at 12 n7), citing the free speech clause in the California constitution and a California statute banning the use of lawsuits to chill free speech. See Cal Const art I, § 2(a); Cal Code Civ Proc § 425.16(a). Those provisions apply to California residents, not Pennsylvania internet users, inanimate computer files or lawsuits filed by British residents against a Pennsylvania resident in Pennsylvania federal court asserting claims under British law. California is not the worldwide regulator of free speech in the digital age.

The Supreme Court held in *Asahi* that courts violate due process when they adjudicate lawsuits with no connection to the forum state. See 480 U.S. at 113–16, 107

S.Ct. 1026. In *Asahi*, a Taiwanese auto parts manufacturer sued a Japanese auto parts manufacturer in California state court, seeking indemnification arising out of a motorcycle accident in Solano County. 480 U.S. at 105–06, 107 S.Ct. 1026. The Court held, in a near-unanimous section of a notoriously splintered opinion, that jurisdiction over the Japanese defendant was unreasonable even though the key factual event—the motorcycle accident—occurred in California. The Court reasoned that California's interest in enforcing its automobile safety standards was too attenuated and "overly broad" when applied to non-California residents in a claim that did not affect safety directly. 480 U.S. at 114–15, 107 S.Ct. 1026. Here, neither party is a California resident, and plaintiffs have not shown that the outcome of this lawsuit will impair the free speech of Californians.

Plaintiff's case for jurisdiction leads to unreasonable (even if unintended) consequences. If plaintiff's theory of jurisdiction were upheld, then the Northern District of California could assert jurisdiction over every single takedown notice ever sent to YouTube or any other company in Silicon Valley. Citizens around the world—from Indonesia to Italy, Suriname to Siberia—could all be haled into court in the San Francisco Bay area, California, USA, for sending off a fax claiming that a video clip is infringing. Federal courts sitting in California could assert personal jurisdiction over foreign defendants in wholly foreign disputes. Consider, for example, Erik Jensen, *Boy dupes YouTube to delete videos*, Sydney Morning Herald (Apr 14, 2007), at http://www.smh.com.au/news/t echnology/boy-dupes-youtube-to-delete-videos/2007 /04/13/1175971361981.html (last visited Jan 3, 2008) (reporting that a 15–year–old boy in Australia pretended to represent the Australian Broadcasting Corporation and "succeeded in having more than 200 clips removed" from YouTube using bogus takedown notices).

Such broad jurisdiction, premised solely on the happenstance that many internet companies that are not even parties to § 512(f) litigation have offices in Silicon Valley, is unreasonable. The Northern District of California is not an international court of internet law.

California's interest in Sapient's case is "slight" (see *Asahi*, 480 U.S. at 114, 107 S.Ct. 1026), and this factor weighs against jurisdiction.

5

▮ The fifth factor—the most efficient judicial resolution of the controversy—weighs against jurisdiction. In this case, the most efficient resolution of the controversy is in the Eastern District of Pennsylvania. Count II of plaintiff's complaint, which seeks a declaratory judgment of noninfringement, is the mirror image of Explorologist's copyright infringement claim pending in Pennsylvania. *Explorologist Ltd v. Sapient*, No 07–1848 LP (E D Pa). Judge Pollak has already denied a motion to dismiss for lack of subject matter jurisdiction and has granted in part and denied in part a 12(b)(6) motion to dismiss. Doc # 31 Exh V. Discovery is underway. See No 07–1848 Doc # 42, 44. Judge Pollak requested additional briefing on various intricacies of British copyright law, and Sapient responded with a motion for partial summary judgment on the British copyright law claim. See No 07–1848 Doc # 45. Many third parties including the American Association of Law Libraries, the American Library Association and Google have moved for leave to file an amicus brief in support of Sapient. See No 07–1848 Doc # 46. Duplication here of those complicated proceedings would be a waste of the parties', the attorneys' and the court's resources. And count I of plaintiff's complaint here becomes moot if Explorologist prevails on its infringement claim in Pennsylvania. Accordingly, Sapi-

ent's claims can be resolved most efficiently by the court that is already familiar with the underlying facts.

■■■ This factor also requires the court to evaluate where the witnesses and evidence are likely to be located. See *Core–Vent*, 11 F.3d at 1489. Plaintiff claims vaguely that he will need to call YouTube employees as witnesses, but he neither identifies any specific witnesses nor describes the subject matter of their testimony—and its relevance or importance to this lawsuit—with any reasonable specificity. See Doc # 30 at 17; compare *Carolina Casualty Co. v. Data Broadcasting Corp.*, 158 F Supp 2d 1044, 1049 (N.D.Cal. 2001) (Walker, J). And in any event, the convenience of witnesses is "no longer weighed heavily given the modern advances in communication and transportation." *Panavision Intl., LP v. Toeppen,* 141 F.3d 1316, 1323 (9th Cir.1998).

### 6

■■■ California does not appear to be important to the plaintiff's interest in convenient and effective relief. In fact, quite the opposite: "[N]o doctorate in astrophysics is required to deduce that trying a case where one lives is almost always a plaintiff's preference." *Roth,* 942 F.2d at 624. Sapient is already litigating in his home state against Explorologist regarding the NOVA video. Sapient "has not shown that the [claim] cannot be effectively remedied in [Pennsylvania] or [England]." *Sinatra,* 854 F.2d at 1200. Sapient fails to articulate any concerns that paint California as "important" to his claim.

The court acknowledges that internet users in Sapient's position will not always be able to establish jurisdiction in their home states (or in the United States) over defendants in § 512(f) cases. The sender of a takedown notice may not know where the target of the takedown notice lives, and therefore the sender does not purposefully direct his actions at any specific individual state. Hence, in some cases, California (the state to which the takedown notice is sent) might be the only plausible state in which to bring a § 512(f) claim over a foreign defendant. The court need not decide the implications of that fact here because Sapient is already a party to related litigation in his home state.

### 7

■■■ The last factor—the existence of an alternative forum—also weighs against jurisdiction. "The plaintiff bears the burden of proving the unavailability of an alternative forum." *Core–Vent,* 11 F.3d at 1490. Sapient has made no such showing that he would be precluded from suing in Pennsylvania or England. See *Harris Rutsky*, 328 F.3d at 1133–34. "Doubtless [Sapient] would prefer not to [litigate in England], but that is not the test." *Roth,* 942 F.2d at 625; see *Core–Vent,* 11 F.3d at 1490; *Sinatra,* 854 F.2d at 1201.

### 8

The court's "balance" of the above factors weighs against jurisdiction. It is "unreasonable and unfair" for this court to assert jurisdiction over British residents in a suit brought by a Pennsylvania resident over an allegedly tortious fax sent to a third party in California. See *Asahi,* 480 U.S. at 116, 107 S.Ct. 1026 ("Considering the international context, the heavy burden on the alien defendant, and the slight interests of the plaintiff and the forum State, the exercise of personal jurisdiction by a California court over Asahi in this instance would be unreasonable and unfair.").

■■■ It is true that jurisdictional difficulties should "be accommodated through means short of finding jurisdiction unconstitutional," such as venue transfer. *Burger King,* 471 U.S. at 477 n. 20, 105 S.Ct.

2174. That admonition is relevant if the issue is the defendant's burden of litigating in the forum state. See *Burger King*, 471 U.S. at 477, 105 S.Ct. 2174 ("[A] defendant claiming substantial inconvenience may seek a change of venue."). Here, by contrast, the glaring flaws in plaintiff's case for jurisdiction are California's lack of an interest in this dispute and the lack of any stopping point to this district's jurisdiction over foreign defendants in § 512(f) cases. Accordingly the court declines to find jurisdiction and transfer venue to Pennsylvania.

Accordingly, defendants have made a "compelling case" that personal jurisdiction in the Northern District of California is unreasonable.

## V

Plaintiff's attempt to establish personal jurisdiction through physical service of process must fail. Doc # 30 at 13–15. Defendants waived service of process, thereby mooting the effect of any subsequent physical service in the state of California. See Fed R Civ P 4(d)(4) (2007) ("When the plaintiff files a waiver, * * * these rules apply *as if a summons and complaint have been served* at the time of filing the waiver.") (emphasis added). Plaintiff advances no support for his theory of double service.

## VI

The court concludes with three final notes. First, Sapient will suffer no actual prejudice as a result of the court's ruling. Sapient will be able to raise his § 512(f) claim against Explorologist as a counterclaim in the Pennsylvania action. See Fed R Civ P 13(a), 13(f), 13(b); *AJ Indus., Inc. v. U.S. Dist. Court for Central Dist. of Cal.*, 503 F.2d 384, 387–89 (1974). And although Geller is not a party to that action, Sapient will be able to bring his claims against Geller using either a regular jurisdiction analysis or the federal

long-arm statute. See Fed R Civ P 4(k)(2).

Second, the court's ruling does not require a per se bar against personal jurisdiction in California over foreign defendants in § 512(f) cases. In some instances, jurisdiction might be appropriate and reasonable based on all the circumstances. If a defendant relies regularly and consistently on YouTube's takedown procedures, then the purposeful direction or purposeful interjection inquiries might be different. Here, had defendants never sued Sapient in the United States, or had they sued him in a state other than his residence, then the analysis might be different as well. Vindication of plaintiffs' rights must be weighed against defendants' interests in a fair trial and the legitimacy of the judicial system (see *Asahi*, 480 U.S. at 113, 107 S.Ct. 1026), and on the facts of this case, the balance tips in favor of defendants.

Third, the DMCA provides explicitly that internet users such as Sapient who wish to rebut a takedown notice must consent to the jurisdiction of a federal district court (see 17 USC 512(g)(3) (D)), but the statute does not require copyright owners who send takedown notices (such as defendants here) to consent to personal jurisdiction (see 17 USC 512(c)(3)). That difference must be viewed as intentional. See *The Adeline*, 9 Cranch 244, 13 U.S. 244, 253, 3 L.Ed. 719 (1815). If that result seems asymmetrical and unfair, then the problem should be resolved by Congress, not this court.

## VI

Even assuming plaintiffs can demonstrate subject matter jurisdiction and purposeful direction, personal jurisdiction over the defendants would violate due process because jurisdiction would not be "reason-

able and just according to our traditional conception of fair play and substantial justice * * *." See *International Shoe Co. v. State of Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Defendants' motion to dismiss for lack of personal jurisdiction is GRANTED.

IT IS SO ORDERED.